JUDGE SCHOFIELD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**14 CV 7696**

------------------------------------------------------------x
CHORUS MUSIC STUDIO, INC., d/b/a
CHORUS KARAOKE, and YOUNG HEE LEE         ECF CASE No.

                Plaintiffs,                COMPLAINT

    v.

KEESOO HONG, HAE YONG LEE, HYO JUNG
JEONGMIN SONG, DAL YOUNG CHO,
KYUNG MO YAN, and SANGYOON SHIN

                Defendants.
------------------------------------------------------------x



      Plaintiffs Chorus Music Studio, Inc., d/b/a Chorus Karaoke (hereinafter, "Chorus") and Young Hee Lee (hereinafter, " YH Lee") through their attorney Susan Ghim collectively, allege as follows:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction pursuant to 28 USC 1331 over Plaintiffs' claims under the Computer Fraud and Abus Act 18 USC 1030(a) et seq. (hereinafter, "CFAA") as it is a federal law or law of the United States.

2.     CFAA 18 USC 1030 (g) confers the right to a civil lawsuit for theft of electronic information for economic damages and injunctive relief.

3.     This Court has supplemental jurisdiction pursuant to 28 USC §1367 and 28 USC §1332 of state claims of misappropriation of trade secrets, conversion and unjust enrichment that arose out of the same facts or transactions as the main federal claim.

4.     Venue is proper in this district as the Plaintiffs are residents of New York County and conduct that gave rise to the claims alleged took place in New York County, in this District

## PARTIES

5.      Plaintiff Chorus Music Studio Inc. is a New York State Corporation doing business as Chorus Karaoke (hereinafter, "Chorus") with a principal place of business located at 25 West 32nd Street, NewYork, NewYork 10001, 3d Floor since on or about 2003.

6.      Young Hee Lee, a resident of the State of New York and County of New York at all relevant times, is the sole shareholder and president of Chorus.

7.      Based upon information and belief, during all relevant times, Defendant Kee Soo Hong (hereinafter, "Defendant Hong" was at all relevant times a resident of the state of New York and resident of the New York City area including its outer boroughs.

8.      Defendant Hong was employed part time at Chorus as a waiter during the period

9.      Based upon information and belief, during the relevant time period, Defendant Hyo Jung (hereinafter, "Defendant Jung") was a resident of the State of New York, and resident of the New York City area including its outer boroughs.

10.     Defendant Jung was employed at Chorus as a waiter during the period on or about February 2008 to on or about February 10, 2013.

11.     Based upon information and belief, during the relevant time period, Defendant Hae Yong Lee was a resident of the State of New York, and New York City area including its outer boroughs.

12.     Defendant Hae Yong Lee was employed at Chorus as a waiter during the period on or about June 2011 to on or about February 10, 2013

13.     Based upon information and belief, during the relevant time period, Defendant Dalyoung Cho (hereinafter, "Cho") was a resident of the state of New York and New York City and its outer boroughs.

14. Defendant Cho was employed at Chorus as a waiter during the period on or about May 2010 to on or about February 10, 2013.

15. Based upon information and belief, during the relevant time period, Defendant JeongMin Song (hereinafter, "Defendant Song") was a resident of the state of New York and New York City and its outer boroughs.

16. Defendant Song was employed at Chorus as a waiter during the period on or about January 2012 to on or about February 10, 2013

17. Based upon information and belief, during the relevant time period, Defendant SangYoon Shin (hereinafter, "Defendant Shin") was a resident of the state of New York and New York City and its outer boroughs.

18. Defendant Shin was employed at Chorus as a waiter during the period from on or about September 2012 to on or about February 10, 2013.

19. Based upon information and belief, during the relevant time period, Defendant Kyung Mo Yang (hereinafter, "Defendant Yang") was a resident of the state of New York and New York City and its outer boroughs.

20. Defendant Yang was employed at Chorus as a waiter during the period on or about January 23, 2011 through on or about February 10, 2011.

## FACTS

21. During Defendant Hong's deposition on or about October 1, 2013 in a separate wage and hour case, Defendant Hong admitted that on or about 2012 when Chorus was changing its business computer, he used his personal email account to email *"everything"* from Chorus' computer to his personal e-mail account.

3

22. A series of three emails dated December 16, 2012 were produced during discovery in the wage and hour claim wherein Defendant Hong "emailed himself" attachments of files from Chorus' computer.

23. During discovery in the wage and hour case, Denise Schulman, Esq. of the law firm Joseph and Kirschenbaum, who represented Defendant Hong and all of the other Defendants in this case in the wage and hour case, produced hard copy or printouts of portions or excerpts of a customer list that was in the Chorus computer files. To date, none of the Defendants acknowledged taking the hard copy documents from the business premises of Chorus and their counsel Denise Schulman, Esq. will not name which of Defendant(s) in this case took the hard copy files.

24. The electronic versions of the customer list were not produced but Defendant Hong stated at his deposition that he took "everything" from the Chorus computer.

25. Denise Schulman, Esq. claimed to have turned over all the emails with attachments that were forwarded to her from Keesoo Hong, however, the electronic version of the customer lists were not produced.

26. Defendants had filed a wage and hour claim in United States District Court, Southern District of New York on or about March 5, 2013 entitled <u>Jung et al., v. Chorus et al.</u>, 13cv1494 (CM)(RLE).

27. The claims alleged in this complaint were proposed as counterclaims in the wage and hour action. The instant complaint contains additional allegations.

28. The facts giving rise to the claims in the instant complaint were learned during discovery in the wage and hour claim after the deadline to amend the pleadings.

29. On or about September 11, 2014 the Court in the wage and hour case denied a motion to amend the pleadings to add counterclaims that are alleged in this complaint because the Court found there was no good cause to allow amendment after the deadline to amend the pleadings. Therefore, this action was commenced as a separate action.

30. The customer list was compiled by Plaintiff Chorus and Plaintiff YH Lee over the course of approximately six years at an expense totaling approximately $300,000.

31. Also contained in the computer files were financial and personal information of other employees and managers at Chorus.

32. Defendant Hong and all remaining Defendants were not at any relevant time given authorization to access any Chorus computer.

33. At all relevant times, all of Defendants were wait staff and their job duties were confined to serving customers food and drink and never required accessing the Chorus computer at issue in this case.

<u>The Defendants Conspired to violate the CFAA and misuse data under common law state claims.</u>

34. Although Defendant Hong took the opportunity to access Chorus' computer without authorization, all named Defendants engaged in a common scheme and plan to steal the computer information to send to their wage and hour attorney Denise Schulman while all Defendants were employed with Chorus.

35. Defendants Hong and Jung admitted at their depositions that all defendants talked about quitting at the same time and their joint business venture club 88 NY.

36. All Defendants after quitting their employment the same week of December 2012 started a business venture called "Club 88," a similar Karaoke club about a city block or two away from Chorus' location.

5

37. Club 88 was not a street level establishment and therefore required marketing for the public to know of their existence.

38. Defendants engaged in a common scheme and plan to use or sell the customer lists contained in the files that Defendant Hong emailed to himself to market their own business venture.

39. Plaintiffs lost the exclusive use of their customer list and suffered a downturn in business after Defendants left Chorus with the customer list.

40. Defendant Hong also stated at his October 1, 2013 deposition that he sent the files he took from the Chorus computer and sent it to his attorneys to "help the case" which included all Defendants in this matter.

41. Defendants conspired to illegally obtain Chorus' computer data to help their wage and case and to use, misuse, disseminate, re-produce and retain business trade secrets and other personal information contained in the files to their legal and pecuniary benefit.

42. Defendant Hong stated at his October 1, 2013 deposition that on or about 2012, a former manager Hun Kim told him to email the Chorus electronic files to himself. However, Plaintiffs did not direct Hun Kim to direct Defendant Hong to email Chorus files to his personal email.

43. Defendant Hong stated at his October 1, 2013 deposition that on or about 2012 manager Hun Kim told him to back up the business computer "[s]o I forwarded the content to my own email address when the computer was removed and I stored the information that had been installed in my e-mail account…"]

44. Even if it were true that a manager told Defendant Hong back up computer files, Defendant Hong exceeded his authority by emailing Chorus' proprietary information to his personal email address and then storing the information.

6

45.   Defendants conspired along with their attorneys who knowingly received illegally obtained electronic data since on or about December 2013.

46.   To date Defendants and their attorneys in the wage and claim have not produced "everything" or all files that were backed up from Chorus' computer and emailed to Defendant Hong's personal email as printouts of portions of a customer list were printed out and produced during discovery but the electronic file has not been produced.

As and for the First Cause of Action under the "CFAA" 28 USC 1030(a) et seq.

47.   Plaintiffs repeat and re-allege all previous paragraphs or allegations as if fully set forth herein.

48.   The CFAA 28 USC 1030(a) et seq. provides for criminal liability and civil damages for "a) Whoever – intentionally accesses a computer without authorization or exceeding authorized access and thereby obtains information from any protected computer, may maintain a civil action against the violater to obtain compensatory damages and injunctive relief or other equitable relief for "damage" and loss.

49.   "Damage" within the meaning of the CFAA means any impairment to the integrity or availability of data, a program, a system or information.

50.   Since on or about December 2012, Defendant Hong has unlawfully stored or retained Chorus' electronic files to date. This transfer of Chorus electronic files (hereinafter "e-files") was without authority or in the alternative exceeded Plaintiff Hong's authority within the meaning of the CFAA and Plaintiff thereby violated the Computer Fraud and Abuse Act 28 USC 1030(a) et seq.

51.   At a deposition of Hong held on October 1, 2013, Hong stated, "I remember there was an occasion when the shop had to change the computer and at that time, manager instructed me to

back up the information that had been stored in the previous computer in a file. So I forwarded the content to my own e-mail address when the computer was removed and I stored the information that had been installed in my e-mail account…"

52. Plaintiffs are continuing to perform a damage assessment to determine the scope of files stolen by Defendant Hong and the value of all information taken and retained by Defendants.

53. All proprietary information, tangible or intangible is valuable to the Plaintiffs and even upon the return of the e-files, the Plaintiffs are not made whole. Therefore, Defendants are individually and severally liable for the value of the files stolen and any profits made thereupon.

54. Defendants are also liable for damages from use, misuse, intentional or negligent disclosure of personal financial information of third parties that were included in the proprietary information actually stolen by Defendant Hong.

55. 18 USC 1030 (a) et seq., provides for injunctive relief to enjoin defendants (in this case Plaintiffs) from further retention, copying, printing, any use, misuse, dissemination or distribution of proprietary or electronic information including but not limited to business information, financial information of the business and individuals, trade secrets and customer lists.

56. Chorus' computer was a "protected computer" as it was used in and to communicate for a business affecting interstate commerce. Specifically, the customer list used for business marketing purposes contained customer or potential customer information who reside within and beyond the New York, New Jersey, Connecticut tri-state area. Chorus also has domestic and international tourist customers.

57. Chorus operates a business affecting interstate commerce as it markets to and serves clients within and beyond the New York, New Jersey, Connecticut tri-state area as well as domestic and international tourists.

58. On or about the year 2012, Defendant Hong conspired with other named Defendants in the main action to take Chorus' proprietary information for use in a lawsuit against Defendants while they were still employed at Chorus and to use proprietary business information to advance their personal business interests and ventures. Defendants acted against the legal and pecuniary interests of the Plaintiffs and thereby violated their duty of loyalty to their employer.

59. Defendant Hong transferred some of the stolen proprietary information to their attorneys Joseph & Kirschenbaum, LLP during the year 2012 while they were employed with Chorus to "help the case" against Chorus and thereby breached his duty of loyalty and acted against the employers' legal interests.

60. All named Defendants quit the same work ending February 10, 2013.

61. Defendant Jung testified at his deposition that Plaintiffs entered into a business venture agreement and named it Club88NY.

62. Under 18 USC 1030(a) et seq, "damage" is further defined as the resulting insecurity in the integrity of the data contained in a protected computer, deletion of files from the protected computer or installation of viruses or other information added, deleted or modified that may compromise or limit the use of the protected computer.

63. Defendant Hong undermined the integrity of Chorus' computer by accessing and/or transferring the e-files without permission or authorization to his personal e-mail and caused Chorus to suffer insecurity in the computers' integrity, availability or access to its proprietary information.

64.     Defendants conspired to steal the information and therefore, Defendants are individually and severally liable to Defendants' for the costs of damage assessments.

65.     Defendant Hong was not at any relevant time requested by Chorus or its officers to aid in the maintenance or repair of the business computers.

66.     Defendant Hong was solely hired as a "busboy" and then as waiter and at no relevant time was Plaintiff called upon to maintain or contribute his computer knowledge or skill to Chorus.

67.     Chorus had a designated technical employee who managed and maintained the business computer when necessary so that Plaintiff Hong was not needed or asked, at any relevant time to back up the business computer or to access the business computer.

68.     Defendant Hong was not asked at any relevant time by Chorus or any of its officers to transfer and / or retain its proprietary information on or in his personal e-mail or any other storage method for e-files.

69.     Under the CFAA " loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment and restoring data, program, system or information prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

70.     Plaintiffs are liable to Defendants for damages any and all "loss" and costs incurred by Defendants to respond to the theft of Chorus proprietary information, conducting damage assessments and any other losses that are learned or assessed through discovery.

<u>As and for the Second Cause of Action against Defendants under Common Law Theft</u>

71.     Plaintiffs repeat, re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

72.     The New York State Court of Appeals on *cert* from the United States Court of Appeals, Second Circuit, held in <u>Thyroff v. Nationwide Insurance</u>, 8 NY3d 283; 832 NYS2d 873 (2007) that a common law state claim in conversion is actionable for theft of intangible electronic data in an employer – employee action.  Therefore, there is no novel or complex issue of state law that would prompt the court from exercising supplemental jurisdiction over the state counterclaims pursuant to 28 USC 1367(c)(1).  There are no other exceptional or compelling reasons for the court to decline jurisdiction pursuant to 28 USC 1367(c)(4).

73.     Defendant Hong intentionally stole hard copy documents from the employer some of which were produced during discovery in the wage and hour case.

74.     Excerpts of the hard copy of the customer list were produced during discovery in the wage and hour case.

75.     Defendants and Defendant Hong conspired in the theft of Chorus' electronic proprietary information so that Plaintiffs lost exclusive use of the customer list and hard copies of the list valued at approximately $300,000 to use for and profit from in their business ventures.

76.     Defendants have used, misused, retained, copied, reproduced, disseminated and sold or transferred the subject customer list to third parties and unjustly enriched themselves.

77.     Plaintiffs have suffered approximately $300,000 in economic damages and reserve all rights to assess and re-assert the economic damages they suffered through discovery.

<u>As and for the Second CounterClaim for misappropriation of trade secrets</u>

78.     Plaintiffs repeat and re-allege each and every prior paragraph as if fully set forth herein.

79.     Customer lists are trade secrets if the owner of the list has taken significant time and expense to create and maintain and the customers are not publicly known.

80. The customer list that was stored in Chorus' business computer and was intentionally stolen by Defendant Hong was a "trade secret" because the customers on the list are not publicly known and Plaintiffs expended a significant amount of time and money approximately $300,000 to create and maintain the list for marketing purposes.

81. Defendants in this action conspired with Defendant Hong in the theft of the Defendants' e-files and knowingly misappropriated and used or misused its exclusive proprietary information including trade secrets, financial information, customer lists, customer financial information and other employees' personal and financial information for Defedants' legal and pecuniary benefit.

82. Defendants contacted or solicited customers on the stolen customer list to promote their business Club88NY and other business ventures or agreements they had.

83. Defendants sold the stolen customer list to third parties and derived profits therefrom.

84. Since the departure of the Defendants on or about February 10, 2013, Defendant Chorus experienced a significant downturn in business revenue.

85. As a direct and proximate result of the wrongful conduct of the Defendants, Plaintiffs have suffered and continue to suffer irreparable injury.

86. As a direct and proximate result of their wrongful conduct, Defendants have been unjustly enriched, and Defendants have suffered and continue to suffer money damages.

### As and for the Third Cause of Action for Unjust Enrichment against Defendants

87. Plaintiffs repeat and re-allege all previous paragraphs as if fully set forth herein.

88. Defendants unjustly enriched themselves with any profits made from the stolen proprietary information taken from Chorus' business computer.

89. Even if the proprietary information is returned to the Plaintiffs, it does not make Plaintiffs financially whole and it is against equity and good conscience to allow Defendants to retain the

benefits derived from their wrongful conduct. Therefore in equity and good conscience, Plaintiffs are entitled to the value of the information stolen and the profits Defendants made from their illegal conduct.

90. As a direct and proximate result of the wrongful conduct of Defendants, Plaintiffs have suffered and continue to suffer irreparable injury.

91. As a direct and proximate result of the wrongful conduct of Defendants, Plaintiffs have suffered and continue to suffer money damages.

92. Plaintiffs assert the right to impose further counter-claims and implead third party defendants as discovery progresses.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that this Court:

a) Order Defendants each individually and severally liable and grant judgment in favor or Plaintiffs for damages, loss and costs pursuant to the CFAA;

b) Order Defendants each individually and severally liable and grant judgment in favor of Plaintiffs for damages and/or disgorgement of profits for misappropriation of trade secrets;

c) Order Defendants individually and severally liable and grant judgment in favor of Plaintiffs for damages and or disgorgement of profits for conversion;

d) Order Defendants individually and severally liable and grant judgment in favor of Plaintiffs for damages and/or disgorgement of profits for unjustment enrichment

e) Grant Plaintiffs permanent injunctive relief to enjoin Plaintiffs and their agents, servants, employees, heirs and assigns from, including but not limited to, further retention and provide certifications under oath that the such information has been destroyed, copying, printing, distribution, dissemination, transfer, download, use, or misuse of Defendants' proprietary information;

f) Order Defendants to retrieve and destroy proprietary information sent to third parties as well as provide those third parties with notice that use of the proprietary information is subject to all legal remedies available to Defendants and certify under oath that such measures have been taken; and

g)  Order Defendants liable for and award costs and attorney fees under the CFAA; and

h)  Order that Defendants must cooperate to defend or prosecute third party claims arising from these counterclaims;

i)  Grant Plaintiffs economic damages under state and federal law for Defendants' theft of Plaintiffs' intangible proprietary information as well as any tangible property taken by Plaintiffs without permission.

j)  Grant Plaintiffs punitive damages for Defendants' state law violations of conversion, misappropriation and unjust enrichment.

k)  Order Defendants, jointly and severally liable to pay Plaintiffs' compensatory damages in an amount to be proven at trial.

l)  Order Defendants, jointly and severally to pay Plaintiffs punitive damages in the maximum amount permitted by law.

m)  Grant Plaintiffs costs and fees including attorney fees pursuant to state and federal law to investigate and enforce the provisions of the CFAA and applicable state law.

n)  Award the Plaintiffs such other and further relief and remedies as this Court deems just and proper.

Dated: September 18, 2014

Respectfully Submitted,

_____
Susan Ghim
Attorney for Plaintiffs
303 Fifth Avenue, Suite 1302
New York, New York 10016
(646) 403-9894